IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARY EDA LINN,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:14-cv-00856-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Mary Eda Linn brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating the medical opinion of consultative examiner Dr. Nolan; (2) whether the ALJ erred in evaluating plaintiff's credibility; and (3) whether the ALJ erred in evaluating a lay witness's credibility. Because the ALJ failed to fully and fairly develop plaintiff's medical record after finding it ambiguous and incomplete, the Commissioner's decision is REVERSED, and this matter is REMANDED for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff applied for DIB and SSI on September 20, 2010, alleging disability since April 19, 2007. Tr. 75, 87. Both claims were denied initially and upon reconsideration. Tr. 20. Plaintiff

1 – OPINION AND ORDER

timely requested a hearing before an Administrative Law Judge (ALJ) and appeared before the Honorable Verrell Dethloff on December 5, 2012. Tr. 39–74. ALJ Dethloff denied plaintiff's claims by a written decision dated December 10, 2012. Tr. 17–34. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1. Plaintiff now seeks judicial review.

Plaintiff, born April 22, 1953, tr. 204, graduated from high school, tr. 228, and attended some community college, tr. 291. Plaintiff's recent work includes: full-time employment as an office specialist (2006–2007), tr. 228, and part-time employment as a home caregiver (2008–2012), tr. 42–43. Plaintiff was fifty-four years old at the time of the alleged disability onset; she was fifty-nine at the time of her hearing. *See* tr. 204. Plaintiff alleges disability due to: "dextroscoliosis and degenerative disc disease of the lumbar and thoracic spine, bilateral carpal tunnel syndrome, dysthymic disorder, and anxiety disorder." Pl.'s Br. 2, ECF No. 15.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with

2 – OPINION AND ORDER

respect to the first four steps, then the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.*

Plaintiff argues that the ALJ's disability decision is not supported by substantial evidence and is based on an application of improper legal standards. In particular, plaintiff argues that: (1) the ALJ erred in evaluating the medical opinion of consultative examiner Dr. Nolan; (2) the ALJ erred in evaluating plaintiff's testimony; and (3) the ALJ erred in evaluating a lay witness's credibility.

**I. Dr. Nolan's Medical Opinion**

Plaintiff contends that the ALJ improperly rejected functional limitations identified by examining physician Raymond P. Nolan, M.D., Ph.D. Pl.'s Br. 9, ECF No. 15. In response, defendant argues that the ALJ properly assessed Dr. Nolan's opinion. Def.'s Br. 6, ECF No. 16.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). Furthermore, "the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam). Because Dr.

3 – OPINION AND ORDER

Nolan's opinion is contradicted in the record,[1] the ALJ can only reject it by providing specific and legitimate reasons that are supported by substantial evidence.

Plaintiff met with consultative examiner Dr. Nolan for an administrative examination on December 6, 2010. *See* tr. 298–99. As a result of that examination, Dr. Nolan opined that plaintiff was able to: sit at least six hours in an eight-hour day; stand and/or walk between two and four hours in an eight-hour day; and carry 20 pounds occasionally and 10 pounds frequently. Tr. 299. Dr. Nolan also assessed plaintiff with "[b]ilateral carpal tunnel syndrome" and opined that "[s]he should probably avoid repetitive hand and wrist activity." *Id.*

The ALJ, after reviewing these findings, rejected Dr. Nolan's opined functional limitations on "repetitive hand and wrist activity" and instead adopted the "more particularized hand limitations" identified by nonexamining physician Peter M. Schosheim, M.D. *See* tr. 29. In according "significant weight" to Dr. Schosheim's opined hand limitations, the ALJ relied on two bases, including: (1) Dr. Schosheim's specialization as an orthopedic surgeon; and (2) Dr. Schosheim's testimony during the administrative hearing. *See* tr. 28–29.

First, the ALJ noted that Dr. Schosheim was a board-certified orthopedic surgeon. *See* tr. 28; *see also* tr. 183–89 ("Medical Expert Resume"). As such, his opinion may be entitled to more weight than that of a nonspecialist physician, e.g., Dr. Nolan. *See* 20 C.F.R. § 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").

---

[1] *See* tr. 82–84, 94–96 (On January 6, 2011, Mary Ann Westfall, M.D., opined that plaintiff's exertional limitations restricted her to: occasionally lifting and/or carrying up to 20 pounds; frequently lifting and/or carrying 10 pounds; standing and/or walking about six hours in an eight-hour day; sitting about six hours in an eight-hour day; and frequent, not constant, handling and fingering.); tr. 110–12, 122–24 (On April 26, 2011, Richard Alley, M.D., affirmed Dr. Westfall's RFC findings.); tr. 62 (On December 5, 2012, Peter M. Schosheim, M.D., opined that plaintiff's exertional limitations restricted her to: occasionally lifting and/or carrying up to 10 pounds; frequently lifting and/or carrying up to 10 pounds; standing and/or walking about four hours in an eight-hour day; sitting about six hours in an eight-hour day; occasionally balancing, stooping, kneeling, crouching, crawling and climbing; and frequently using both hands for fine manipulation.).

4 – OPINION AND ORDER

Second, the ALJ determined that Dr. Schosheim's testimony during the administrative hearing was "amply supported by the record." Tr. 28 n.8. During the administrative hearing, Dr. Schosheim opined, based on a "lack[] of medical evidence," that plaintiff "has no limitations of gross manipulation [with both hands], but would have only frequent use of both hands for fine manipulation." Tr. 62. Dr. Schosheim explained that he could not confirm carpal tunnel syndrome because plaintiff "did not have a nerve conduction study or any physical examinations with regard to her hand to indicate any significant loss of sensation or any significant grip strength loss." Tr. 66. Nonetheless, Dr. Schosheim acknowledged that plaintiff had reported tingling and pain in her fingers and hands, and he allegedly considered those symptoms when formulating his opined limitation on fine manipulation. *See* tr. 61, 66. Because the ALJ adopted this reasoning—i.e., that the record is inadequate to evaluate whether or not plaintiff has carpal tunnel syndrome—the ALJ's own findings triggered his duty to conduct an appropriate inquiry. *See Tonapetyan*, 242 F.3d at 1150 ("Given this reliance [on Dr. Walter's opinion], the ALJ was not free to ignore Dr. Walter's equivocations and his concern over the lack of a complete record upon which to assess Tonapetyan's mental impairment.").

The ALJ's duty to conduct an appropriate inquiry is further required by the presence of two different assessments of carpal tunnel syndrome. First, in a report dated June 30, 2009, plaintiff's primary care physician, Robyn Dreibelbis, D.O., wrote that plaintiff's Phalen's test[2] was positive at 30 seconds; Dr. Dreibelbis assessed plaintiff with possible carpal tunnel syndrome. Tr. 306–07. At that time, Dr. Dreibelbis also recommended that a nerve conduction study be performed to evaluate the severity of plaintiff's carpal tunnel syndrome. *Id.* at 307.

---

[2] Phalen's test is "[a] test for determining median nerve compression in the carpal tunnel of the wrist; the wrist is placed in an acute flexed position; if there is median nerve compression, paresthesias [i.e., pins-and-needles sensations] of the thumb and adjacent two fingers usually occur after several seconds; normal individuals may develop paresthesias after a few minutes of sustained acute wrist flexion." *Attorney's Illustrated Medical Dictionary* T25 (Ida G. Dox, Ph.D., et al. eds., 1997).

5 – OPINION AND ORDER

Second, in December 2010, upon examining plaintiff's wrists, Dr. Nolan reported that plaintiff's Tinel's sign[3] was positive bilaterally, tr. 298; he assessed her with bilateral carpal tunnel syndrome, tr. 299.

In sum, the ALJ erred by crediting Dr. Schosheim's opinion, as well as Dr. Schosheim's rationale for that opinion, without fully and fairly developing plaintiff's medical record. Even though Dr. Schosheim is a medical specialist, his repeated caveats regarding the sparseness of the record, combined with the assessments of carpal tunnel syndrome from both Dr. Dreibelbis and Dr. Nolan, triggered the ALJ's duty to develop the record more fully. The ALJ's failure to do so therefore constitutes a reversible error. *See Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))).

## II. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in evaluating her credibility. Pl.'s Br. 11–16, ECF No. 15. In response, defendant argues that the ALJ's findings are supported by substantial evidence. Def.'s Br. 9, ECF No. 16.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 C.F.R. §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis[4] and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms."

---

[3] "Tinel's sign [is a test] in which median nerve paresthesias [i.e., pins-and-needles sensations] are reproduced by tapping at the volar surface of the wrist over the site of the median nerve in the carpal tunnel." *The Merck Manual of Diagnosis and Therapy* 335 (Mark H. Beers, M.D., et al. eds., 18th ed. 2006).

[4] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

6 – OPINION AND ORDER

*Smolen*, 80 F.3d at 1281. If a claimant meets the *Cotton* analysis and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff's statements concerning her alleged limitations were not credible to the extent that they were inconsistent with the RFC. *See* tr. 26–28. In making this determination, the ALJ relied on three bases, including: (1) plaintiff's activities of daily living, including part-time work as a home caregiver, were not consistent with her alleged degree of impairment; (2) testimony from Gregory A. Cole, Ph.D., the consultative expert who performed a psychodiagnostic evaluation of plaintiff, demonstrated that plaintiff's statements about her impairments were "exaggerated [and] partly without any objective support"; and (3) plaintiff's receipt of unemployment benefits indicated that she had held herself out as capable of maintaining full-time employment. Tr. 26–28. Because defendant does not dispute that the third reason was invalid, this Court's analysis will focus on the first two reasons.

First, the ALJ found that plaintiff's daily activities, including her part-time work, were not consistent with her alleged degree of impairment. *See* tr. 27. The ALJ explained in part:

> [P]laintiff described her job duties as providing transportation for her clients, taking them shopping, reminding them to take medication, fixing dinner "4 nights a week" and cleaning wounds "on a daily basis." The claimant further testified that she helped a lady with taking showers "once every two weeks." Actual performance of the above job duties on a sustained basis for at least three years after the alleged onset date contravenes the claim of total disability.

7 – OPINION AND ORDER

Tr. 27 (citation omitted). These findings, if supported in the record, can support an adverse credibility determination. See *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Plaintiff, who alleges a disability onset date in 2007, worked as a part-time home caregiver between 2008 and 2011. *See* tr. 27, 42–43, 228. In that role, as discussed by the ALJ, plaintiff performed many duties that can be reasonably interpreted as inconsistent with her alleged degree of impairment. For example, plaintiff alleged incapacitating anxiety, tr. 51, yet assisted with clients' medication, tr. 43; plaintiff alleged that she could not walk safely for more than half of one block, tr. 54, yet routinely took clients shopping, tr. 43.

In addition to these work-related activities, plaintiff reported that she regularly: shopped; read; watched movies; socialized with friends, e.g., telephone conversations, personal visits, and get-togethers for "dinner/snacks"; and maintained a typical hygiene routine that included washing hair, brushing teeth, applying make-up, and inserting contact lenses. *See* tr. 234, 236–37. These daily activities, like plaintiff's part-time work duties, can be reasonably interpreted as inconsistent with her alleged degree of mental impairment. For example, at her administrative hearing, plaintiff reported that her anxiety prevented her from thinking and functioning, and that she was "terrified" that she would freeze up during the hearing. *See* tr. 51. Yet, when asked to describe her "ability to express herself" at that same hearing, plaintiff testified that she felt she was "doing better—far better than [she] thought was possible." Tr. 51–52.

Second, the ALJ discredited plaintiff's testimony because he found it "exaggerated [and] partly without any objective support." *See* tr. 27–29. For example, plaintiff reported continuous debilitating anxiety that prevented her from performing even the simplest of tasks. *See* tr. 51–52. Yet Dr. Cole, upon conducting plaintiff's psychodiagnostic evaluation, found that plaintiff "was able to sustain simple routine tasks" and had "only mild problems completing a simple multiple-

8 – OPINION AND ORDER

step task." Tr. 294. Dr. Cole concluded that plaintiff's "claimed problems with pain would be the primary factors which would impact her overall level of vocational success." *Id.*

In sum, plaintiff's allegations are contradicted by both her own daily activities and by the reports of Dr. Cole, a consultative expert. Accordingly, the ALJ properly evaluated plaintiff's credibility.

## III. Lay Witness's Credibility

Plaintiff contends that the ALJ erred when he rejected functional limitations identified by lay witness Crystal Linn (Crystal), plaintiff's daughter. Pl.'s Br. 16, ECF No. 15. Defendant contends that the ALJ provided germane reasons for rejecting these limitations. Def.'s Br. 12, ECF No. 16.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)). In determining credibility, an ALJ may reject lay witness testimony if that testimony is inconsistent with the medical record. *See Bayliss*, 427 F.3d at 1218.

Crystal submitted a third-party function report, dated October 30, 2010, tr. 250–57, and a testimonial letter, dated November 29, 2012, tr. 282–85. In these documents, Crystal reported that plaintiff had difficulty performing basic functions at home and at work because of "chronic, constant pain." Tr. 283; *see also* tr. 284 ("[Plaintiff] can not work, she can not use her arms well,

9 – OPINION AND ORDER

and she has very little strength in her legs, and experiences shooting pain and spasms throughout her whole nervous system. She can not sit, stand or even sleep without chronic, habitual pain.").

The ALJ, after reviewing these observations, rejected Crystal's reported observations because: (1) they were inconsistent with plaintiff's statements; (2) they were inconsistent with plaintiff's daily activities, including her part-time employment; and (3) they were inconsistent with consultative examination reports in the record. Tr. 29–30. Each of these three explanations represents a germane reason for rejecting Crystal's testimony.

First, the ALJ found that Crystal's reported observations were inconsistent with plaintiff's statements. Tr. 29. For example, Crystal reported that plaintiff struggled to care for herself, e.g., "putting in eye contacts, applying cosmetics, and styling [] hair," and was "becom[ing] very reclusive." Tr. 283. In contrast, plaintiff reported that her impairments did not affect her ability to "Dress, Bathe, Care for hair, Shave, Feed self, [and] Use the toilet," tr. 235, and that she continued to spend time with others on a weekly basis, e.g., "phone calls, personal visits, movies (usually in home), get[ting] together for dinner/snacks, or just talk[ing] and laugh[ing]," tr. 237.

Second, the ALJ found that Crystal's reported observations were inconsistent with plaintiff's daily activities, including part-time employment between 2008 and 2011. Tr. 29–30. For example, Crystal reported that plaintiff was unable to complete many of her duties as a home caretaker because of her functional limitations. *See* tr. 283 ("[M]any of [plaintiff's clients'] domestic needs . . . were completely impossible for her to complete."). Yet, plaintiff maintained consistent part-time employment with a single employer between 2008 and 2011, *see* tr. 228, and asserted that she could do "anything that [her employer] could put [her] on," tr. 43.

10 – OPINION AND ORDER

Third, the ALJ found that Crystal's reported observations were inconsistent with the consultative examination reports in the record. *See* tr. 29–30; *see also* tr. 290–95, 298–99. For example, Crystal wrote that plaintiff had so much trouble walking and maintaining her balance that plaintiff's "falling again and sustaining another fracture" was practically inevitable. *See* tr. 283–84. But after performing diagnostic tests on plaintiff's gait and balance, Dr. Nolan described plaintiff as being "[a]ble to go from sitting to standing without difficulty. . . . Able to do a tandem and Romberg.[5] Able to walk on toes and heels." Tr. 298 Crystal stated that plaintiff lived in "chronic, constant pain" and that plaintiff "experiences constant fear and anxiety." Tr. 283. But in contrast, Dr. Cole found "no evidence of psychomotor agitation or slowing, and no unusual physical mannerisms. . . . [Plaintiff] also did not exhibit any observable pain behaviors." Tr. 292.

In sum, the reasons described above represent germane reasons to reject Crystal's reported observations. Accordingly, the ALJ properly evaluated Crystal's credibility.

## IV. Remand

This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). To remand for an award of benefits, three elements must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;

---

[5] Tandem gait is a test in which a patient is instructed "to 'walk a tightrope' or do the 'drunk test' by placing one foot in front of the other, taking each step with the heel directly in front of the toe." Andrew Tarulli, *Neurology: A Clinician's Approach* 145 (2011). Romberg is a test in which a patient is first instructed to maintain her balance while standing with her feet placed together, then instructed to close her eyes. *Id.*

11 – OPINION AND ORDER

> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The error identified by this Court—the ALJ's failure to fully and fairly develop plaintiff's medical record—is reversible. That error does not meet the first and third elements identified above. Even if plaintiff's medical record is fully developed, it is not clear that, if presented with a more complete medical record, the ALJ would necessarily find plaintiff disabled. Accordingly, this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. See *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'") (quoting *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002)).

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is REVERSED, and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby ordered, upon remand:

> **1.** The ALJ shall obtain additional objective medical evidence regarding plaintiff's alleged carpal tunnel syndrome and related neurological impairments;
>
> **2.** If necessary, the ALJ shall reevaluate the medical opinion evidence and explain the weight given to each opinion;
>
> **3.** If necessary, the ALJ shall reevaluate plaintiff's RFC;
>
> **4.** If necessary, the ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental vocational expert evidence.

IT IS SO ORDERED.

DATED this __28__ day of July, 2015

                                     _____
                                      **Michael J. McShane**
                                     **United States District Judge**

13 – OPINION AND ORDER